Filed 10/14/24  P. v. Huynh CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082806 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD222832) |
| PHILONG HUYNH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Runston G. Maino, Judge.  Reversed and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, and Andrew Mestman, Deputy Attorney General, for Plaintiff and Respondent.

Philong Huynh appeals from an order denying his petition to vacate his murder conviction and to be resentenced pursuant to Penal Code section 1172.6.[1]  His appointed appellate counsel filed an opening brief requesting

---

[1]    Further unspecified statutory references are to the Penal Code.

review under *People v. Delgadillo* (2022) 14 Cal.5th 216.  After we issued a *Delgadillo* order notifying Huynh of his right to file a supplemental brief, he did so.

In his supplemental brief, Huynh argues, among other claims, that the jury instructions from his trial permitted the prosecution to proceed under a theory of felony murder and the natural and probable consequences doctrine. After review of Huynh's brief, we requested supplemental briefing from the parties addressing the effect, if any, of *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*) on the issue of whether the superior court erred by denying Huynh's resentencing petition at the prima facie stage.  As we shall discuss, we conclude the record of conviction does not confirm, as a matter of law, that Huynh is ineligible for relief under section 1172.6.  Accordingly, we shall reverse and remand with directions to the superior court to issue an order to show cause.

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, a jury convicted Huynh of first degree murder (§ 187, subd. (a)), two counts of sodomy of an intoxicated person (§ 286, subd. (i)), and two counts of oral copulation of an intoxicated person (former § 288a, subd. (i), renumbered as § 287, subd. (i)).  The jury found true the special circumstances allegations that the murder was committed during the commission or attempted commission of oral copulation (§ 190.2, subd. (a)(17)(F)) and sodomy (§ 190.2, subd. (a)(17)(D)).  Huynh was the sole defendant charged in connection with the murder.  The trial court sentenced Huynh to life without the possibility of parole for the murder offense, plus an additional determinate term of 10 years for the sodomy and oral copulation offenses.  We affirmed the judgment in 2012.  (*People v. Huynh* (2012) 212 Cal.App.4th 285.)

In 2019, Huynh petitioned to vacate his conviction under section 1172.6.[2] The trial court summarily denied the petition without appointing counsel or holding a hearing. Relying on our prior opinion in Huynh's direct appeal, the trial court found Huynh was the actual killer and therefore ineligible for relief. We affirmed the trial court's order in May 2020. (*People v. Huynh* (May 8, 2020, D075588) [nonpub. opn.] (*Huynh*).)

Thereafter, following amendments to section 1172.6 made by Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), Huynh filed a second petition for resentencing in March 2023. The court appointed counsel, received further briefing from the parties, and conducted a prima facie hearing. At the hearing, the court informed the parties it had reviewed the prior appellate opinions from Huynh's direct appeal and the appeal from his first petition for resentencing. Huynh objected to the court's consideration of the appellate opinions, arguing that section 1172.6 prohibited the court "from relying on [them] for anything but a procedural history." In response, the prosecutor stated: "Your Honor, I don't think the Court needs to rely on the Court of Appeal opinion in this matter to find that the Petitioner is ineligible. So I don't take issue with that." The court responded: "Okay. Very well." The court explained that although it had read the opinions, it understood the purpose of the proceeding at the prima stage was not "factfinding."

Among other evidence submitted prior to the hearing, the People provided the jury instructions from Huynh's 2011 jury trial. The instruction enumerating the elements of first degree felony murder, CALCRIM No. 540A,

---

[2] Huynh brought his initial petition in 2019 under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58, § 10, (Assem. Bill No. 200).) We refer to the statute by its current number throughout this opinion.

required the People to prove at Huynh's trial that he (1) committed or attempted to commit sodomy or oral copulation of an intoxicated person, (2) intended to commit sodomy or oral copulation of an intoxicated person, and (3) caused the death of another person while committing or attempting to commit sodomy or oral copulation of an intoxicated person. The instruction related to the special circumstance allegation, CALCRIM No. 730, similarly required the People to prove Huynh committed or attempted to commit sodomy or oral copulation of an intoxicated person and did an act that caused the death of another person. The court also provided CALCRIM No. 549, which required the People to prove Huynh's commission or attempted commission of sodomy or oral copulation of an intoxicated person was part of a continuous transaction with the act that caused the victim's death. The instruction provided a list of factors to assist the jury in this determination, including whether the victim's death was a natural and probable consequence of the sodomy or oral copulation offenses.

At the hearing, the prosecutor argued Huynh was collaterally estopped from raising the claims in the instant petition because they had already been raised in his first petition. According to the prosecutor, the legislative amendments to the felony murder resentencing process under section 1172.6 were inapplicable to Huynh's case. As to the merits of the petition, the prosecutor argued the jury instructions demonstrated Huynh was convicted of felony murder as the actual killer, and he was not convicted under a theory of accomplice liability or under the natural and probable consequences doctrine. Thus, he was ineligible for relief as a matter of law.

Huynh argued he was not collaterally estopped from raising the claims in his second petition because there had been significant changes to the resentencing procedure under section 1172.6 since he filed his initial petition.

4

Next, he contended that because the jury was instructed on felony murder, the court should find he presented a prima facie claim for relief and the case should proceed to an evidentiary hearing. He acknowledged that he was the only person charged in the Information, but he argued this fact alone did not necessarily mean there were no other individuals involved in the commission of the offense. Huynh emphasized that the burden at the prima facie stage was "quite low."

After considering the parties' arguments, the court expressed "severe doubts" that it had jurisdiction to hear the case. The court acknowledged the law had changed since Huynh's first petition for resentencing but questioned whether these changes were applicable to his case. Nonetheless, the court assumed it had jurisdiction and found that Huynh "[fell] outside the statute." The prosecutor requested clarification as to the ruling, and the court explained it found Huynh was the "actual killer" and therefore ineligible for relief. Therefore, the court denied the petition.

This appeal followed.

## DISCUSSION

In 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) "[S]ection 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' (. . . § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the

5

commission of murder in the first degree' (*id.*, subd. (e)(2))." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) Senate Bill 1437 also created a procedural mechanism that allows persons convicted under the former murder laws to petition for retroactive relief. (*Ibid.*; Stats. 2018, ch. 1015, § 4.)

Thereafter, Senate Bill 775 made several amendments to the resentencing procedures set forth in section 1172.6. Among other changes, Senate Bill 775 amended section 1172.6, subdivision (d)(3) governing evidentiary hearings to allow courts to consider only "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) Several courts have since construed this language to mean that trial courts are not permitted to rely on facts recited in an appellate opinion to rule on a petition under section 1172.6, even at the prima facie stage.[3] (*Beaudreaux,*

---

[3] Although the parties have not raised collateral estoppel in their supplemental letter briefs, we note that the amendments made to section 1172.6 by Senate Bill 775 permitted Huynh to file a second petition. In denying Huynh's initial petition, the trial court relied on our prior appellate opinion from Huynh's direct appeal. (*Huynh, supra*, D075588 ["[c]iting our prior opinion, the trial [court] found Huynh 'was the actual killer' (§ 189, subd. (e)(1)) and, thus, was ineligible for resentencing even under the new felony-murder standard"].) Thereafter, some courts have construed Senate Bill 775 to prohibit reliance on the facts stated in a prior appellate opinion, even at the prima facie stage. (See, e.g., *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238 (*Beaudreax*); *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 (*Cooper*); *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*).) Thus, changes to section 1172.6 after Huynh filed his initial petition permitted him to raise the claims in the instant petition. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 951 [changes to the substance and procedure of section 1172.6, including judicial interpretations of the scope of the law, permitted litigation of a subsequent petition]; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*) [petition was not barred by issue preclusion because the petition made claims based on new law that did not exist at the time of the initial petition].)

*supra*, 100 Cal.App.4th at p. 1238; *Cooper, supra*, 77 Cal.App.5th at p. 400, fn. 9; see also *People v. Langi* (2022) 73 Cal.App.5th 972, 979–980 [trial court erred by treating statements in the prior appellate opinion as conclusive as to whether the appellant was the actual killer; but see *People v. Lopez* (2023) 88 Cal.App.5th 566, 576 [prima facie inquiry "is limited to the allegations in the petition and undisputed facts from the record of conviction (which includes the appellate opinion)"]; *Lopez, supra*, 78 Cal.App.5th at p. 13 ["The record of conviction may include the underlying facts as presented in an appellate opinion . . . ."].)

A petitioner initiates the resentencing process under section 1172.6 by "filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))." (*Strong, supra*, 13 Cal.5th at p. 708.) For a petition satisfying the pleading requirements under section 1172.6, subdivisions (a)(1) through (3), the court must appoint counsel, permit briefing, and conduct an initial hearing under subdivision (c) to determine whether the petitioner has made a prima facie case for relief, and if so, issue an order to show cause. (§ 1172.6, subds. (b)(3), (c).)

The trial court may deny the petition at the prima facie stage only if the record of conviction conclusively demonstrates the petitioner is ineligible for relief as a matter of law. (*Lewis, supra*, 11 Cal.5th at pp. 970–972.) Although the court may examine the record of conviction to assess the petitioner's eligibility for relief, it may not engage in factfinding, weigh the evidence, or assess credibility at the prima facie stage. (*Id.* at pp. 971–972.) The record of conviction includes, among other evidence, the jury instructions

7

and verdict forms from the petitioner's jury trial. (See *People v. Ervin* (2021) 72 Cal.App.5th 90, 106–109 [court properly considered the jury instructions and verdict forms to evaluate the petitioner's prima facie claim for relief under section 1172.6].) We independently review the trial court's decision to deny a petition under section 1172.6. (*Harden, supra*, 81 Cal.App.5th at p. 52.)

Here, the People argue the record of conviction from Huynh's trial—namely, the jury instructions—conclusively demonstrate Huynh was convicted as the actual and sole perpetrator of the murder for which he was convicted. The People acknowledge the language from the jury instructions at Huynh's trial was similar to that in *Lopez,* and that in *Lopez* the reviewing court concluded the jury instructions did not preclude the petitioner from relief under section 1172.6 as a matter of law. (*Lopez, supra*, 78 Cal.App.5th at p. 20.) However, according to the People, the factual issues presented at Huynh's trial were distinct from those in *Lopez.*

As we discuss, we are not persuaded by the People's argument. The jury instructions from Huynh's trial related to the felony murder charge were nearly identical to those at issue in *Lopez.* As in *Lopez,* to reach a conclusion that Huynh was ineligible for relief, the trial court would have had to weigh the evidence and find he was the actual killer. Such weighing is impermissible at the prima facie stage. Accordingly, we conclude the jury instructions do not conclusively establish, as a matter of law, that Huynh is ineligible for relief under section 1172.6.

In *Lopez,* the jury convicted the defendant of first degree murder and found true an allegation the murder was committed while the defendant was engaged in the commission of a robbery. (*Lopez, supra*, 78 Cal.App.5th at p. 10.) During the defendant's trial, "[t]he jury was instructed with

8

CALCRIM No. 540A that to find [the] defendant guilty of felony murder, it had to find he committed robbery and '[w]hile committing robbery, the defendant *caused the death of another person.*' " (*Id.* at p. 16.) "On the subject of causation, the trial court instructed the jury as follows: 'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.' " (*Ibid.*) The jury was also instructed with CALCRIM No. 730, "that to find the robbery-murder special-circumstance allegation to be true, the jury had to find [the] defendant 'did an act that *caused the death of another person.*' " (*Lopez*, at p. 16.) The defendant in *Lopez* filed a petition seeking relief under section 1172.6, and the trial court found the defendant failed to make a prima facie case for relief and denied the petition. (*Lopez*, at p. 11.)

On appeal, the *Lopez* court reviewed the trial court's determination that the record of conviction foreclosed the defendant's eligibility for relief. (*Lopez, supra*, 78 Cal.App.5th at pp. 4–5, 20.) The court concluded that although the "jury necessarily found that [the] defendant 'caused the death of another person' and 'did an act that caused the death of another person' " (*id.* at p. 16), the record of conviction did not conclusively demonstrate, as a matter of law, that the jury found the defendant personally killed the victim. (*Id.* at pp. 17, 19.)

To illustrate this point, the court in *Lopez* discussed *People v. Garcia* (2020) 46 Cal.App.5th 123, a case in which the defendant handed duct tape to a codefendant, who then placed the tape over the victim's mouth, causing the victim to die. (*Lopez, supra*, 78 Cal.App.5th at p. 18.) The *Garcia* court concluded the meaning of "actual killer" within the context of the special

9

circumstances allegation under section 190.2, subdivision (b) was "literal: 'The actual killer is the person who personally kills the victim, whether by shooting, stabbing, or—in this case—taping his mouth closed, resulting in death by asphyxiation.' " (*Lopez*, at p. 18, quoting *Garcia*, at p. 152.) The court in *Garcia* reasoned that a jury instruction allowing the jury to find a special circumstance true based on a finding that the defendant had *caused* the victim's death fell short of the required finding that he was the *actual killer* of the victim. (*Ibid.*)

Similarly, in *Lopez* the court reasoned, "[t]he jury instructions created the possibility the jury convicted [the] defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer. The jury was not instructed it had to find [the] defendant personally killed the victim to convict him; the jury was instructed it only had to find [the] defendant committed an act that caused the victim's death. The jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation." (78 Cal.App.5th at p. 20.)

Here, the trial court instructed the jury with the same instructions at issue in *Lopez*: CALCRIM Nos. 540A and 730. These instructions required the jury to find Huynh committed an act that "caused" the death of another person. But the instructions did not necessarily require the jury to find he personally killed the victim. Instead, the instructions permitted the jury to convict Huynh if it concluded the victim's death occurred during the commission or attempted commission of sodomy or oral copulation of an intoxicated person, and Huynh did an act that *caused* the victim's death. The jury instructions therefore do not conclusively disclose, as a matter of law,

10

that Huynh was the actual killer. Rather, as in *Lopez*, the instructions allowed for the possibility that the jury convicted Huynh as a participant in the underlying felonies so long as he did an act that caused the victim's death.

This court has previously applied *Lopez* in a similar manner in *Harden*. (*Harden, supra*, 81 Cal.App.5th at p. 54.) There, the jury was instructed on felony murder and a robbery special circumstances allegation like the jury in *Lopez*. (*Id*. at p. 58.) However, the instructions in *Harden* required the jury to find the defendant "kill[ed] a human being" and that the defendant personally inflicted great bodily injury on the deceased victim; by contrast, the instructions in *Lopez* did not require a finding that the defendant killed a human being, but instead merely required a finding that the defendant " 'committed an act that *caused* the death.' " (*Ibid*.) In comparing these jury instructions, we concluded that the instructions in *Harden* were dissimilar from *Lopez* and that the trial court correctly denied the defendant's petition at the prima facie hearing because the jury had to find the defendant personally killed the victim. (*Ibid*.)

The instructions from Huynh's trial are nearly identical to those in *Lopez,* and unlike the instructions in *Harden*. The jury at Huynh's trial was not required to find Huynh actually killed another human being or that he personally inflicted great bodily injury during the commission of the offense, like in *Harden*. Instead, the instructions merely required the jury to find Huynh committed an act that caused the death of another human being.

The evidence the People cite in their supplemental letter brief does not support a contrary conclusion. The People emphasize that the appellate opinion from Huynh's direct appeal describes Huynh's case as a "single-perpetrator case." As we have noted, however, the People forfeited

11

any reliance on the facts recited in our prior appellate opinions by acquiescing in defense counsel's objection, which was supported by existing case law. (*Flores, supra*, 76 Cal.App.5th at p. 988.) Additionally, the People argue that the decision in *Lopez* "hinged" on the defendant's testimony, and that this testimony provided the jury with a basis to believe the defendant participated in a robbery but did not personally kill the victim. According to the People, the record from Huynh's trial does not disclose a similar basis to allow for vicarious liability like the defendant's testimony in *Lopez*. But here the record does not indicate the trial court reviewed the transcripts from Huynh's trial to find he was ineligible for relief as a matter of law, nor is this evidence before this court. The record that *is* before this court and that may be properly considered in reviewing Huynh's section 1172.6 petition—the charging documents, jury instructions, and verdict forms—do not conclusively demonstrate, as a matter of law, Huynh's ineligibility for relief.

Accordingly, we reverse the order denying Huynh's petition for relief and direct the trial court to issue an order to show cause. We take no position on whether Huynh is ultimately entitled to relief under section 1172.6.

## DISPOSITION

The order denying Huynh's section 1172.6 petition is reversed. The trial court is directed to issue an order to show cause and conduct the proceedings required by section 1172.6, subdivision (d).


KELETY, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.

13